United States District Court
Southern District of Texas
**ENTERED**
February 11, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § CRIMINAL ACTION NO. H-19-599-1 |
| v. | § |
| | § CIVIL ACTION NO. H-22-4539 |
| KESHA LYNETTE HARRIS | § |
| BOP # 99431-479 | § |

## MEMORANDUM OPINION AND ORDER

Federal prisoner Kesha Lynette Harris (BOP # 99431-479), representing herself, has filed a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255, challenging her 2021 conviction for conspiracy to unlawfully distribute and dispense controlled substances. (Docket Entry No. 87). The government filed a memorandum in opposition, attaching an affidavit from defense counsel responding to Harris's claim that she had received ineffective assistance. (Docket Entry Nos. 94, 106). Harris has not filed a response. Based on the motion, the response, the affidavit, and the applicable law, the court denies Harris's motion. The reasons are explained below.

**I.   Background**

Harris was charged with running a pill mill out of the pharmacy she owned and operated. (*See* Docket Entry No. 1; Docket Entry No. 48; Docket Entry No. 60). Harris was the pharmacist in charge. She pleaded guilty to conspiracy to knowingly and intentionally distribute or dispense prescriptions for 587,000 pills of oxycodone, 488,000 pills of hydrocodone, and 390,000 pills of carisoprodol without a legitimate medical purpose and outside the usual course of professional conduct. (Docket Entry No. 48). She agreed that she had made $3.8 million in profits from these illegal activities. (*Id.*). In her plea agreement, Harris agreed to the facts set out above. (*See*

Docket Entry No. 48). She also stated, under oath at the rearraignment, that she was fully satisfied with her lawyer's representation. (*See* Rearraignment Tr., Docket Entry No. 102 at 5).

The court sentenced Harris to a 108-month prison term, well below the 240 months that was the low end of the guideline range. (*See* Minute Entry for 12/2/2021; Docket Entry No. 75). The court imposed a money judgment of $3.8 million. (*See* Minute Entry for 12/2/2021; Docket Entry No. 71).

Harris timely filed her § 2255 motion, and the government timely responded. Harris's primary claim is ineffective assistance of counsel. (*See* Docket Entry Nos. 87, 88). She claims that her trial counsel, Edwin Morris, provided ineffective assistance (1) for failing to advise her that she should promptly enter into a plea agreement with the United States, (2) by failing to properly investigate exculpatory evidence in negotiating a favorable plea agreement, and (3) for failing to consult with her about her theory of the case. (*See* Docket Entry No. 88). She also claims that the Supreme Court case of *United States v. Ruan*, 597 U.S. 450 (2022) requires that her sentence be vacated. (*Id.*). Morris filed a lengthy affidavit addressing Harris's ineffective assistance claims. (Docket Entry Nos. 94, 96).[1] As explained below, Morris's affidavit and the record clearly show that Harris received constitutionally sufficient counsel and that she has no basis for relief under § 2255.

## II.    The Legal Standards for § 2255 Motions

Postconviction relief under 28 U.S.C. § 2255 is limited to errors of constitutional dimension that could not have been raised on direct appeal and that, if left unaddressed, would result in a complete miscarriage of justice. *See United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *see also United States v. Rodriguez-Castro,* 814 F. App'x 835, 837–38 (5th Cir.

---

[1] Morris's affidavit was filed at both Docket Entry No. 94 and Docket Entry No. 96. The affidavits filed at each docket entry appear to be identical.

2

2020) (per curiam). Because of these limitations, a federal defendant may move to vacate, set aside, or correct his sentence under § 2255 only if: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence imposed exceeds the statutory maximum; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

A defendant seeking relief under § 2255 is entitled to an evidentiary hearing on his claims "unless either (1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *United States v. Allen*, 918 F.3d 457, 460 (5th Cir. 2019) (quoting *United States v. Harrison*, 910 F.3d 824, 826–27 (5th Cir. 2018)). If the defendant fails to meet his burden of proof at the pleadings stage, an evidentiary hearing is not necessary. *See Cervantes*, 132 F.3d at 1110; *see also United States v. Fields*, 565 F.3d 290, 298 (5th Cir. 2009) ("[T]he district court need not hold an evidentiary hearing to resolve ineffective assistance claims where the petitioner has failed to allege facts which, if proved, would admit of relief." (quoting *Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994)).

### III. Analysis

To prevail on an ineffective assistance of counsel claim, the defendant must show that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of the *Strickland* test requires the defendant to show that counsel's representation was objectively unreasonable. *Id.* at 687–88. Reasonableness is measured against prevailing

3

professional norms and is viewed under the totality of the circumstances. *Id.* at 688. The second prong of the *Strickland* test requires the defendant to show that "it is reasonably likely the result would have been different," if not for counsel's deficient performance. *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (cleaned up). The defendant has the burden of proof on both *Strickland* prongs. *See United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under both prongs, judicial scrutiny is highly deferential, and the defendant must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. The court presumes that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). To overcome the presumption, the defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Because a defendant must satisfy both prongs of *Strickland*, even if counsel's performance was professionally unreasonable, the sentence will not be set aside unless it was adversely affected by the deficiency. *See id.* at 691. To establish prejudice, a defendant must show that the result of the challenged proceeding would have been different without counsel's allegedly deficient performance "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. When the defendant raises ineffective assistance of counsel in connection with the imposition of his sentence, he must show that, but for counsel's errors, he would have received less time in prison. *See United States v. Grammas*, 376 F.3d 433, 437–38 (5th Cir. 2004) (citing *Glover v. United States*, 531 U.S. 198, 203 (2001)).

Harris's allegations about Morris's performance are contradicted by the record, including Morris's affidavit. The record shows that Morris gave her timely and extensive advice about the

4

benefits and drawbacks of entering a guilty plea. (*See* Docket Entry No. 94-1). Morris arranged for the government to engage in two reverse proffers, which consisted of extensive evidence supporting the government's allegations that Harris was running a large pill mill scheme. (*See id.* at 2–3, 5). Morris arranged for Harris to meet with the government so that she could personally review the evidence against her. (*Id.* at 2–3, 5). On the day of the first reverse proffer, which occurred shortly after Morris was retained, Morris advised Harris to authorize him to enter into plea negotiations with the government, based on evidence and information presented by the government at the reverse proffer. (*Id.* at 3). Harris refused to let Morris enter into plea negotiations. (*Id.*). Morris told Harris several times that if she pleaded guilty early, she would be in a better position to argue for a lower sentence. (*See id.* at 3–5).

Morris's affidavit describes his work to obtain access to the government's discovery, send copies to Harris, and to review it with her. (*See generally* Docket Entry No. 94-1). Morris informed Harris of the guideline sentence range that was likely to apply, creating a chart to make that clear. (*Id.* at 3–4.) Morris also represented Harris in the Texas Pharmacy Board's license revocation proceeding, and shared with Harris the spreadsheet the Board had created showing the extent of Harris's illegal opioid prescription practice. (*Id.* at 4). Morris shared with Harris the information that the Board had provided her with a publication titled "You Might be a Pill Mill," listing the many red flags that the government would use to show that Harris knew she was running a pill mill and continued to do. (*Id.*).

The record shows that Harris and Morris had extensive discussions. (*See generally* Docket Entry No. 94-1). When Harris named potential helpful witnesses, Morris hired an investigator to find these witnesses. (*Id.* at 5–6). They either could not be found or were affirmatively harmful to

5

Harris's case. (*Id.* at 5–6). Morris interviewed a potential expert, but he had no helpful, and many harmful, opinions about the legality of Harris's activities. (*Id.* at 6).

Harris cannot show that trial counsel's performance was deficient. She has failed to satisfy the first *Strickland* prong, which precludes relief on her § 2255 motion.

In addition to failing to show deficient performance, Harris cannot satisfy the second *Strickland* prong by showing that she was prejudiced by trial counsel's alleged deficiencies. Harris pleaded guilty and received a sentence far below the lowest end of the guideline range. There is no evidence that but for Morris's deficient performance, Harris would have insisted on going to trial or that she would have received a lower sentence. The record shows that Harris cannot establish that she was prejudiced by any alleged deficient performance by trial counsel.

The record also undermines Harris's argument that *United States v. Ruan*, 597 U.S. 450 (2022), invalidated her conviction. *Ruan* does not impact the drug conspiracy allegations or evidence against Harris. And the plea colloquy included admonishments about the mens rea requirement that are consistent with *Ruan*.

The record shows that Harris cannot establish that she was prejudiced by any alleged deficient performance by trial counsel. Having failed to establish *Strickland*'s deficiency and prejudice prongs, Harris cannot prove her ineffective assistance of counsel claim, and her motion to vacate, set aside, or correct his sentence is denied.

## IV. Certificate of Appealability

A certificate of appealability is required before Harris may appeal. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (§ 2254 and § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997). "This is a jurisdictional

prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless a defendant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires the defendant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The defendant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the [§ 2255 motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484). As to claims that a district court rejects solely on procedural grounds, the defendant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

After carefully considering the record, the court concludes that reasonable jurists could not find Harris's claims meritorious. No certificate of appealability is issued.

7

## V.     Conclusion

Harris is not entitled to relief under 28 U.S.C. § 2255. Harris's § 2255 motion, Docket Entry Nos. 87 and 88, is denied. No certificate of appealability will issue. Final judgment in the civil action, 4:22-cv-4539, is entered by separate order.

SIGNED on February 10, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge